IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENNETH EUGENE SPEIGHT** | : | CIVIL ACTION |
| Petitioner, | : | |
| v. | : | |
| **PATRICK L. MEEHAN, United States Attorney for the Eastern District of Pennsylvania,** | : | NO. 08-3235 |
| Respondent. | : | |

### ORDER AND MEMORANDUM

### O R D E R

AND NOW, this 8th day of December, 2008, upon consideration of the Petition for Writ of Mandamus, or in the Alternative, for a Writ of Prohibition filed by *pro se* petitioner Kenneth Eugene Speight (Document No. 1, filed July 10, 2008), for the reasons set forth in the attached Memorandum, the Petition for Writ of Mandamus, or in the Alternative, for a Writ of Prohibition is **DENIED**.

### M E M O R A N D U M

**I.   FACTS AND PROCEDURAL HISTORY**

On July 10, 2008, petitioner, Kenneth Eugene Speight, filed a *pro se* Petition for Writ of Mandamus, or in the Alternative, for a Writ of Prohibition, pursuant to 28 U.S.C. § 1651 in this Court. Petitioner seeks a writ of mandamus or prohibition directed to Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, ordering him to present certain information to a special grand jury as provided for by the Organized Crime Control Act of 1970,

18 U.S.C. § 3332(a).

At the time petitioner filed the instant petition, he was incarcerated in McKean Federal Correctional Institution in Bradford, Pennsylvania. On April 16, 2008, petitioner sent a letter to respondent requesting that respondent present the enclosed information to a grand jury pursuant to 18 U.S.C. § 3332(a). (Pet. 1.) In the letter, petitioner alleged the following facts, which he claimed "evidence[d] offenses against the criminal laws of the United States." (Id. Ex. A at 1.) According to petitioner, in January 2005, Bureau of Prisons ("BOP") employees Hattie Sims, a unit manager, and Amy Foura, a case manager, entered false data into petitioner's custody classification file, the consequence of which was an adverse determination raising his custody level. (Id.) In 2006, petitioner submitted an administrative remedy request—a BP-9—to correct the false data. (Id.) On September 29, 2006, petitioner was notified of the receipt of his BP-9. (Id.) According to petitioner, there was no further communication concerning the BP-9 until October 25, 2006, when petitioner received both the original form and a photocopy bearing the words "I wish to withdraw this admin remedy, due to my issue being resolved by my unit team." (Id. Ex. A at 1–2.) The statement was dated October 2, 2006 and accompanied by petitioner's signature, which petitioner alleges was forged. (Id. Ex. A at 2.) Petitioner filed an appeal with the Northeast Regional Director of the BOP, which was denied on the ground that petitioner's signature was "verified," proving that he had withdrawn his administrative request. (Id.)

In November 2006, petitioner filed a Freedom of Information Act ("FOIA") request with the BOP for all files pertaining to his BP-9. (Id.) According to petitioner, the BOP failed to acknowledge or comply with his FOIA request. (Id.)

On January 12, 2007, petitioner filed a civil action against Sims, Foura, and other BOP employees in the United States District Court for the Middle District of Pennsylvania.

(Complaint, Speight v. Sims, No. 07-64 (M.D. Pa. Jan. 12, 2007).)  On March 27, 2008, that court granted defendants' motion for summary judgment on, *inter alia*, the ground that petitioner failed to exhaust his administrative remedies.  Memorandum and Order of March 27, 2008, at 11–14, Speight v. Sims, No. 07-64 (M.D. Pa. Mar. 27, 2008).  On June 30, 2008, the Third Circuit affirmed the judgment of the District Court.  Speight v. Sims, 238 Fed. Appx. 880, 883 (3d Cir. 2008).  Petitioner alleges that during the litigation, defendants relied upon a sworn declaration of Rosalind Bingham, a BOP paralegal specialist, stating that she "verified" the signature on the note withdrawing the BP-9 as belonging to petitioner.  (Pet. Ex. A at 2–3.)  Petitioner also alleges that Assistant United States Attorney ("AUSA") Jennifer Clark obtained a protective order to "preclude disclosure of any records regarding the BP-9."  (Id. Ex. A at 4.)

In his April 16, 2008 letter to respondent, petitioner claims that the conduct of Sims, Foura, AUSA Clark, and Bingham was unlawful and should be presented to a grand jury pursuant to § 3332(a).  The letter requested that respondent "notify [petitioner] of [respondent's] intentions regarding this request . . . ."  (Id.)  According to petitioner, respondent failed to acknowledge both petitioner's original letter of April 16, 2008 and his follow-up letter of June 5, 2008.  (Pet. 1–2.)  Thereafter, petitioner filed the instant Petition for Writ of Mandamus, or in the Alternative, for a Writ of Prohibition in this Court.  (Doc. No. 1, filed July 10, 2008.)

**II.   STANDARD OF REVIEW**

"[T]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.[1]  Under § 1361, "the test for jurisdiction

---

[1] Petitioner seeks a writ of mandamus, or in the alternative, a writ of prohibition pursuant to 28 U.S.C. § 1651, the All Writs Act, which authorizes courts to grant writs "in aid of . . .

is whether mandamus would be an appropriate means of relief." Jones v. Alexander, 609 F.2d 778, 781 (5th Cir. 1980) (citing Carter v. Seamans, 411 F.2d 767, 773 (5th Cir. 1969)). Mandamus is considered an "extraordinary remedy." Mallard v. United States Dist. Ct. for the S. Dist. of Iowa, 490 U.S. 296, 309 (1989). As a "drastic remedy," it is "seldom issued and its use is discouraged." In re Patenuade, 210 F.3d 135, 140 (3d Cir. 2000) (citations omitted).

To ensure that the writ will only issue in appropriately extraordinary circumstances, a party seeking issuance of such a writ must demonstrate (1) that a public official has a well-defined and mandatory duty to perform a certain act, (2) that the petitioner has a clear and indisputable right to have that act performed, and (3) that no other adequate remedy is available. See Mallard, 490 U.S. at 309; Heckler v. Ringer, 466 U.S. 602, 616 (1984); Jones, 609 F.2d at 781. The duty owed by the government must be "a legal duty which is a specific, plain ministerial act 'devoid of the exercise of judgment or discretion.' An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt." Harmon Cove Condo. Assoc. v. Marsh, 815 F.2d 949, 951 (3d Cir. 1987) (citing Richardson v. United States, 465 F.2d 844, 849 (3d Cir. 1972) (en banc)).

The Court has discretion over whether to issue a writ of mandamus. It may refrain from issuing a writ even when the technical grounds for mandamus are satisfied. See In re Patenaude, 210 F.3d at 141.

---

jurisdiction[]." As described in the remainder of his Petition, what petitioner actually requests is a writ of mandamus—a writ compelling a government officer to perform a mandatory duty—as provided for in 28 U.S.C. § 1361. As petitioner is *pro se*, the Court will read his submissions generously and construe his Petition as seeking relief under § 1361. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers").

### III.  DISCUSSION

#### A.  General Rules Governing Standing

Standing is a legal device, the "core component [of which] is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Standing limits a plaintiff's ability to invoke the power of the federal courts. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). As the standing requirement is derived from Article III, it is a threshold inquiry in every case, one for which "[t]he party invoking federal jurisdiction bears the burden" of proof. Lujan, 504 U.S. at 561. To overcome this burden, the party seeking federal jurisdiction must establish "the irreducible constitutional minimum of standing," which is composed of three elements:

> First, the plaintiff must have suffered "an injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Id. (internal citations omitted).

Even when the issue of standing is not raised by the parties, the case-or-controversy requirement of Article III mandates that a court must consider it *sua sponte*. See, e.g., Boeing Co. v. Van Gemert, 444 U.S. 472, 488 n.4 (1980) (citing Juidice v. Vail, 430 U.S. 327, 331 (1977)). When a plaintiff lacks standing, the court must dismiss the case on that ground and need not express a view on the merits of the claim. See Linda R.S. v. Richard D., 410 U.S. 614, 619 n.6 (1973).

5

B.     **Petitioner Lacks Standing in This Case**

In the instant case, petitioner asks the Court to issue a writ of mandamus to compel respondent to inform a grand jury of the allegations contained in petitioner's April 16, 2008 letter pursuant to 18 U.S.C. § 3332(a).  Petitioner alleges that Sims, Foura, AUSA Clark, Bingham, and other BOP employees acted unlawfully with respect to his custody classification file and his subsequent attempts to obtain administrative and other relief.  He seeks to have respondent present this conduct to a grand jury.  Applying the general principles enunciated above, petitioner lacks standing to make such a request.

Section 3332(a), which was enacted by the Organized Crime Control Act of 1970, provides, in relevant part, that:

> It shall be the duty of each [special] grand jury impaneled within any judicial district to inquire into offenses against the criminal laws of the United States alleged to have been committed within that district. . . . Any . . . attorney [appearing on behalf of the United States] receiving information concerning such an alleged offense from any other person shall, if requested by such other person, inform the grand jury of such alleged offense, the identity of such other person, and such attorney's action or recommendation.

Petitioner contends that the use of the word "shall" imposes on respondent an "affirmative" duty to present petitioner's information to a grand jury.  (Pet. 2.)  Even accepting *arguendo* that § 3332(a) creates a mandatory duty, petitioner lacks standing to enforce the statute.

In Sargeant v. Dixon, 130 F.3d 1067, 1068 (D.C. Cir. 1997), petitioners sought a writ of mandamus under § 3332(a) to compel the presentation of evidence concerning alleged unlawful conduct by federal officers to a grand jury.  The alleged unlawful conduct included, *inter alia*, a conspiracy to present false evidence at the trial of one of the petitioners.  The court concluded that petitioners' interests "in the prosecution of government officials and in seeing that the laws were enforced . . . [were] not legally cognizable within the framework of Article III," and thus

petitioners did not have standing.  Id. at 1069.  In so ruling, the court recognized that although petitioner could have "a legally cognizable interest in collaterally attacking his conviction by convincing a grand jury to indict the federal officers who, he alleges, wrongfully prosecuted him, the vindication of that interest on the basis of the allegations in his complaint is too speculative . . . to support his standing."  Id.  Continuing, the court stated that the petitioners lacked standing to request the issuance of a writ of mandamus because the connection between convening a grand jury under § 3332(a) and relief for petitioners failed to meet the third prong of Lujan—that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  504 U.S. at 561.  In conclusion, the Sargeant court emphasized that its ruling that petitioners lacked standing was based on the fact that they "failed to identify any cognizable injury, not because § 3332 is inherently unenforceable at the instance of a private litigant; for example, a person who would be entitled to a bounty if a prosecution were initiated might well have standing."  130 F.3d at 1070.

District courts to consider whether petitioners can request writs of mandamus to enforce § 3332 have reached the same conclusion as the Sargeant court.  These courts reasoned that the likelihood that presenting evidence to a grand jury under § 3332(a) would result in collateral relief for petitioners was too speculative to give petitioners standing to seek the issuance of writs of mandamus.  See Bain v. Vt. Dist. Ct., No. 06-214, 2007 WL 4412032, at *5 (D. Vt. Dec. 14, 2007) ("Any argument that such a proceeding would lead to prosecution, and the prosecution to convictions, and those convictions to ultimate collateral relief on [petitioner's] sentence, is highly speculative."); see also Lundy v. United States, No. 07-1008, 2007 WL 4556702, at *2 (C.D. Ill. Dec. 21, 2007), corrected on other grounds by 2008 WL 2510172 (C.D. Ill. June 19, 2008) ("Petitioner does not have a legally cognizable interest in collaterally attacking his conviction by

convincing a grand jury to indict those individuals who assisted in his own criminal prosecution.").

Based on the forgoing authority, the Court concludes that petitioner lacks standing to enforce § 3332 as the connection between the prosecution of the BOP employees and AUSA Clark named in his April 16, 2008 letter and redress of his injuries is, at best, only speculative. Petitioner seeks indictment and prosecution of the BOP employees and AUSA Clark for their alleged unlawful conduct, including, *inter alia*, forging the withdrawal note and petitioner's signature on his BP-9, falsely claiming that petitioner's signature was "verified," failing to conduct a proper investigation, committing perjury and obstructing justice in petitioner's civil action, and improperly precluding discovery. (Pet. Ex. A at 3–4.) Any such indictment and prosecution would not remedy petitioner's claimed injuries. The holdings in <u>Sargeant</u> and <u>Lujan</u> dictate that such a tenuous relationship is not sufficient to support standing. This Court thus concludes that petitioner lacks standing to enforce § 3332 in this case.

## V.   CONCLUSION

For the forgoing reasons, the Petition for Writ of Mandamus, or in the Alternative, a Writ of Prohibition, is denied.

**BY THE COURT:**

**/s/ Honorable Jan E. DuBois**
**JAN E. DUBOIS, J.**

8